IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STORMY GOWER, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Civil No. 18-953 |
| ALL BUT FURGOTTEN HUMANE RESCUE a non-profit organization, ERIN CASSIDY, ANDREA PALMER, CASSIE WILSON, JOHN DOE, and JANE DOE, | ) |
| Defendants. | ) |

**OPINION**

Plaintiff Stormy Gower brings this civil rights action under 42 U.S.C. § 1983, alleging that the Defendants violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution by conducting an unlawful search of her property and by an illegal seizure of property based upon false allegations. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6). ECF No. 36. After careful consideration of the parties' positions, and for the following reasons, the Motion to Dismiss will be granted in part, and denied in part.

**I.    BACKGROUND**

   **A. Procedural History**

On July 20, 2018, Ms. Gower filed a Complaint against All But Furgotten Humane Rescue, Erin Cassidy, Andrea Palmer, Cassie Wilson, and John Doe and Jane Doe (the "Doe Defendants"). ECF No. 1. The Doe Defendants have not been served. Defendants, All But Furgotten Humane Rescue, Erin Cassidy, Andrea Palmer, and Cassie Wilson (collectively

"Defendants"), responded to the Complaint by filing a Motion to Dismiss the Complaint. ECF No. 6. In response, Ms. Gower filed a Brief in Opposition (ECF No. 17), as well as a Motion to Amend her Complaint (ECF No. 16), which she argued addressed some of the well-founded arguments in the Defendants' Motion to Dismiss. The Court granted Ms. Gower's Motion to Amend, and Ms. Gower filed her Amended Complaint on November 28, 2018. ECF No. 20.

In response, Defendants filed a second Motion to Dismiss the Amended Complaint, ECF No. 23. Again, Ms. Gower filed a Motion to Amend her Amended Complaint, ECF No. 25, with an attached proposed Second Amended Complaint, ECF No. 25-1, which she contended rendered moot the Defendants' well-founded argument to dismiss her Fourth Amendment claim. See ECF No. 25, at ¶ 3 (citing ECF No. 25-1, at ¶¶ 13-14). The Court denied Ms. Gower's Motion to Amend the Amended Complaint. On January 24, 2019, the Court heard oral argument on Defendants' Motion to Dismiss Plaintiff's Amended Complaint, after which Defendant's Motion to Dismiss was granted, without prejudice. Opinion and Order, Feb. 2, 2019, ECF No. 33. On February 19, 2019, Ms. Gower filed her Second Amended Complaint. ECF No. 34. In response, on March 5, 2019, the Defendants filed the present Motion to Dismiss said Second Amended Complaint. ECF No. 36. On March 19, 2019, Ms. Gower filed a Brief in Opposition to Defendants' Motion to Dismiss. ECF No. 38. On June 21, 2019, Defendants' filed a Supplemental Brief in Support of their Motion to Dismiss, ECF No. 46, to which Ms. Gower filed a Response on July 3, 2019, ECF No. 47.

## B. Factual Background

Because the parties are familiar with the relevant background, and the Court has previously set forth the factual background in its prior Opinion, ECF No. 33, at 2-4, this Opinion will briefly review the relevant facts. Ms. Gower is the owner of Thundering Hill Farm in Yukon, Westmoreland County, Pennsylvania, on which she maintains various animals for business and personal use. Defendant, All But Furgotten Humane Rescue, is a Pennsylvania non-profit with the purpose of the prevention of cruelty to animals. Defendants Erin Cassidy, Andrea Palmer, and Cassie Wilson (the "named Defendants" or the "humane officers") are humane society police officers acting on behalf of Defendant All But Furgotten Humane Rescue. Ms. Gower alleges that the unnamed Doe Defendants, residents of Westmoreland County, Pennsylvania, made false allegations to at least one of the humane society police officers, and that all of the officers knew the allegations were false. Ms. Gower alleges that the humane officers knew the allegations were false because the officers had contemporaneously observed the condition of Ms. Gower's animals on her property and how they were kept. Moreover, she alleges that the officers recklessly omitted from the affidavit said material exculpatory facts regarding the officers' contemporaneous knowledge.

Ms. Gower alleges that the false allegations were included in an affidavit of probable cause in order to secure a search warrant to search her property at night on February 6, 2018. Ms. Gower alleges the search warrant did not permit a nighttime search. A Pennsylvania State Trooper informed the humane officers that the warrant was invalid, and the humane officers left the property and obtained a second search warrant. That same night, February 6, 2018, the officers returned to Ms. Gower's property to execute the second warrant. Ms. Gower alleges that the second warrant, although providing for a nighttime search, was invalid, because it was based

3

on an insufficient affidavit of probable cause, which again included false allegations and insufficient facts to establish probable cause. In addition, she alleges that the humane officers failed to include the fact that they had prior contemporaneous knowledge of the conditions of her animals, and that the officers had observed the conditions of Ms. Gower's animals during the execution of the first search warrant. In executing the second warrant, the humane officers seized various animals from Ms. Gower's property, in addition to cats that had been seized during the execution of the first warrant. Ms. Gower further alleges that, on February 27, 2018, Ms. Gower demanded the return of her animals. On or about March 11, 2018, some of the animals were returned to Ms. Gower, but her dog was not returned.

In her Second Amended Complaint, Ms. Gower sets forth a claim that an unlawful search and seizure violated her constitutional rights under 42 U.S.C § 1983 and the Fourth Amendment (Count I); a claim that a reckless investigation violated her constitutional rights under 42 U.S.C § 1983 and the Fourteenth Amendment (Count II); and state law claims for Intentional Infliction of Emotional Distress (Count III), Trespass (Count IV), and Conversion (Count V). In addition, Ms. Gower claims that All But Furgotten Humane Rescue is liable, based upon its failure to properly train, control, discipline or supervise Defendants Cassidy, Palmer, and Wilson, which created a substantial risk of the constitutional violations that occurred. Second Am. Compl. ¶¶ 37-43.

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see also Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir.2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)); see also Connelly v. Lane Const. Corp., 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light

most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Plaintiff's allegations must be accepted as true and construed in the light most favorable to plaintiff when determining if complaint should be dismissed. Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017), as amended (Aug. 22, 2017). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. Morse v. Lower Merion School District, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. Maio v. Aetna, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326–327, (1989).

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

### III. DISCUSSION

#### A. Section 1983 Claim for Unlawful Search and Seizure (Count I)

Ms. Gower alleges that the search warrants were invalid because it was procured through affidavits of probable cause that contained materially false statements and reckless omissions of fact. Second Am. Compl. ¶ 17. Ms. Gower alleges that when the false statements are removed

6

from the affidavits, and the omitted facts added to the affidavits, it would lead a judge to find that probable cause was lacking. Second Am. Compl. ¶¶ 15, 17, 21.

1. **Applicable Law**

To establish a section 1983 claim, which challenges the validity of a search warrant because of alleged false statements or reckless omissions of fact, "the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997) (citing Franks v. Delaware, 438 U.S. 154, 171–72 (1978)).

A false assertion of fact "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting United States v. Clapp, 46 F.3d at 795, 801 n. 6 (8th Cir. 1995)). Omissions "are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" Wilson, 212 F.3d at 789 (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir.1993)).

2. **False statements**

Ms. Gower alleges that the Doe Defendants told the humane officers "allegations against the Plaintiff and her business which were materially false." Second Am. Compl. ¶ 12. She alleges that the humane officers relied on false statements, including, but not limited to, a "'complaint of chicken in view [...]'", and "a complaint of 'dog not moving, in plain view

7

[...]'". Second Am. Compl. ¶¶ 13-14, 15 (brackets and ellipses in original).[1] Ms. Gower alleges that the humane officers' statements were not limited to the two identified statements, but she does not explicitly state any other allegations. A fair inference from Ms. Gower's allegations, however, is that the Doe Defendants falsely told the humane officers that Ms. Gower's animals were in poor condition and not being properly cared for, the humane officers knew such allegations were false, and they nonetheless included the statements in the affidavits of probable cause. See Second Am. Compl. ¶¶ 19 & 25 (alleging that the humane officers knew the Doe Defendants' unidentified statements were false because the humane officers knew that Ms. Gower's animals were in good health, well cared for, and kept and maintained under proper, lawful, and humane conditions).

### 3. Omissions of Fact

Ms. Gower also alleges that the humane officers deliberately and recklessly omitted material exculpatory facts from the first and second affidavits. Ms. Gower alleges the humane officers omitted the fact that Defendant Wilson had previously, and for some time, provided grooming services to Ms. Gower's cats and dogs; and therefore, Ms. Wilson knew that Ms. Gower's cats and dogs were in good health and well cared for. Second Am. Compl. ¶¶ 20a, 26a. Second, Ms. Gower alleges that the humane officers omitted from both affidavits the fact that

---

[1] The complete paragraphs in the Second Amended Complaint state:

> 13. These allegations included, but were not limited to, a "complaint of chicken in view [...]" This allegation was, and is, patently false. Plaintiff's chickens were not kept in plain view. Rather, the chickens were kept and maintained under proper, lawful and humane conditions, in a chicken coop that cannot be viewed from public property.
>
> 14. The allegations further included, but were not limited to, a complaint of "dog not moving, in plain view [...]" This allegation was, and is, patently false. Plaintiff's dogs were not kept in plain view. Rather, Plaintiff's dogs were kept and maintained under proper, lawful and humane conditions in locations that cannot be viewed from public property.

Second Am. Compl. ¶¶ 13-14 (brackets and ellipses in original).

8

"shortly before" seeking the search warrant, all of the humane officers had recently, and unlawfully, entered onto her property, observed her animals, and saw that the animals were kept and maintained under proper, lawful, and humane conditions. Second Am. Compl. ¶¶ 20b, 26b. Third, Ms. Gower alleges that the humane officers omitted from the second affidavit the fact that during the execution of the first warrant the affiants were accompanied by a Westmoreland County humane officer and members of the Westmoreland County Critical Animal Response Team; and that said animal rescue personnel had also visited Ms. Gower's property on numerous occasions in the past, and that they were aware that her animals were kept and maintained under proper, lawful, and humane conditions. Second Am. Compl. ¶¶ 26c-d. Finally, she alleges that in applying for the second search warrant, the humane officers omitted from the affidavit the fact that the humane officers and accompanying animal rescue personnel were present on Ms. Gower's property earlier that night, and they saw that her animals were in good condition and properly cared for, and that no animals were in plain view. Second Am. Compl. ¶¶ 25b, 26b-d.

### 3. Analysis

Ms. Gower's allegations are sufficient to state a section 1983 search and seizure claim. Ms. Gower alleges that the humane officers had the opportunity to view Ms. Gower's animals on her property, both "shortly before" applying for the first search warrant, and then again when the first search warrant was executed. The Court finds that a reasonable person would know that a judge reviewing an application for a search warrant regarding animal welfare, would want to know that the humane officers had contemporaneously observed the condition of the animals and how they were kept, and that such observations were exculpatory to plaintiff or contradictory to other affidavit allegations. Wilson, 212 F.3d at 783. Here, Ms. Gower alleges that, based on their own observations, the humane officers had "obvious reasons to doubt the accuracy of the

9

information" reported to them and which they included in the affidavits about the condition of Ms. Gower's animals. Id. at 788. With regard to the omitted facts, the humane officers "would have known" that their recent observations of the condition of Ms. Gower's animals "was the kind of thing the judge would wish to know". Id. at 789.

Similar animal welfare cases involving allegations concerning humane officers' contemporaneous actions and present observations, support the conclusion reached in this case. Bamont v. Pennsylvania Soc'y for the Prevention of Cruelty to Animals, 163 F. Supp. 3d 138 (E.D. Pa. 2016); Allen v. Pennsylvania Soc. for Prevention of Cruelty to Animals, 488 F. Supp. 2d 450 (M.D. Pa. 2007)). In both Bamont and Allen, the humane officers were alleged to have interviewed the plaintiff, viewed the animals, and saw the conditions at the plaintiff's residence on one day, and on the next day each prepared an affidavit that included false statements and omissions directly based on each officers' visit the prior day. In Bamont, the plaintiff alleged that an officer, who had visited plaintiff inside her home on October 30, 2013, "falsely stated he observed a cat lying on a deceased cat," in his affidavit of probable cause for a search warrant, which he obtained and executed the next day, October 31, 2013. Bamont, 163 F. Supp. 3d at 142, 146. The plaintiff alleged further that the officer "falsely stated the cats had not been to the veterinarian or received treatment in over one year," even though on the day the officer visited her, the plaintiff had told the officer that she had purchased flea medication, applied it, and taken the cats to the veterinarian within the past year. Id. Finally, the plaintiff alleged that the officer deliberately omitted the fact that, on the day of the visit, the officer saw that the cats had access to food and clean water, that there was no urine or feces on the floor, and that the litter boxes were clean. Id. Similarly, in Allen, the plaintiff alleged the officer omitted facts and included misstatements in his affidavit of probable cause he prepared one day after the officer had visited

plaintiff, spoke with him about his animals, and had the opportunity to view his animals. Allen, 488 F. Supp. 2d at 455, 464 (visit occurred on February 1, 2004, search warrant obtained and executed on February 2, 2004). In both cases, the district court found each plaintiff's section 1983 claim was sufficiently plead.

Although Ms. Gower's allegations, regarding the officers' application for the first search warrant, lack the specificity of timing alleged in Bamont and Allen, Ms. Gower's allegations imply that the humane officers' present and contemporaneous knowledge contradicted any statements set forth in the first affidavit of probable cause to indicate that her animals were not in good condition, were not being properly cared for, and that that there were animals in plain view. It is premature at the motion to dismiss stage to make a factual determination as to when the humane officers were present on Ms. Gower's property prior to seeking the first search warrant.[2] Trzaska, 865 F.3d at 162. With regard to the second search warrant, there is no question that the allegations support that the humane officers were present on Ms. Gower's property earlier in the evening of the same day and had the opportunity to observe the conditions that she alleges were then in existence that night.

At this stage, Ms. Gower has provided sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The United States Court of Appeals for the Third Circuit Court has repeatedly instructed that the standard of review at the motion to dismiss stage requires that "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." Trzaska, 865 F.3d at 162 (quoting Connelly, 809 F.3d at 789). When determining if a

---

[2] Ms. Gower has provided "enough facts to raise a reasonable expectation that discovery will reveal evidence" of when the humane officers were present on her property. Phillips, 515 F.3d at 234.

11

complaint should be dismissed, the plaintiff's allegations must be accepted as true and construed in the light most favorable to the plaintiff. Trzaska, 865 F.3d at 162. Here, Ms. Gower's allegations, taken as true, state a colorable claim of an unlawful search and seizure. Ms. Gower alleges that the humane officers affidavit of probable cause omitted exculpatory facts and included false statements regarding the condition of her animals in order to procure both the first and second search warrants. She also alleges that the omissions of fact and false statements were material to the finding of probable cause for both warrants. As such, Ms. Gower has provided sufficient information to state a claim that the Defendants procured a deficient search warrant. Accordingly, Defendants' motion to dismiss Ms. Gower's section 1983 search and seizure claim will be denied.

### B. Section 1983 Claim for Reckless Investigation (Count II)

Next, Defendants argue that Ms. Gower fails to state a reckless investigation claim. In Johnson v. Logan, the Third Circuit Court, in affirming the District Court's grant of summary judgment upon plaintiff's claim of reckless investigation, stated: "We note, without deciding, that we have significant doubts about whether there is an independent substantive due process right to be free from a reckless investigation." 721 F. App'x 205, 208 n.9 (3d Cir. 2018). In Defendants' Supplemental Brief, they cite to Magistrate Judge Lenihan's recent opinion in Braunstein v. Paws Across Pittsburgh, No. 2:18-CV-788, 2019 WL 1458236 (W.D. Pa. Apr. 2, 2019), in part, for the proposition that they are entitled to qualified immunity from the reckless investigation claim. Defs.' Supp. Br. 3-4. In her Response to the Supplemental Brief, Ms. Gower withdraws her reckless investigation claim. Pltf. Resp. to Supp. Br. 2. As such, Defendants' Motion to Dismiss as regards said claim is moot. Count II is withdrawn.

### C. <u>Monell</u> Claim

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), the Supreme Court held that local governments are "persons" subject to suit under § 1983 under certain circumstances. "To plead a municipal liability claim, a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." <u>Estate of Roman v. City of Newark</u>, 914 F.3d 789, 798 (3d Cir. 2019) (quoting <u>Monell</u>, 436 U.S. at 694.) Ms. Gower bases her section 1983 municipal liability claim on All But Furgotten Humane Rescue's alleged failure-to-train. To properly plead a failure-to-train claim, Ms. Gower "must demonstrate that [All But Furgotten Humane Rescue's] failure to train its employees 'reflects a deliberate or conscious choice.'" <u>Estate of Roman</u>, 914 F.3d at 798 (quoting <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 215 (3d Cir. 2001)). In addition, for section 1983 liability to exist, the failure to train must, "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." <u>Id.</u> (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)). As recently explained by the United States Court of Appeals for the Third Circuit:

> A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'

<u>Estate of Roman</u>, 914 F.3d at 798 (quoting <u>Doe v. Luzerne County</u>, 660 F.3d 169, 180 (3d Cir. 2011)).

The relevant allegations, from Ms. Gower's Amended Complaint, are as follows:

> 37. Defendant All But Furgotten has a duty to properly train, control, discipline and/or supervise its agents, Defendants Cassidy, Palmer and Wilson.

> 38. More specifically, Defendant All But Furgotten has a duty to properly train the named Defendants on obtaining search warrants.

13

39. Defendant All But Furgotten failed to properly train, control, discipline and/or supervise its agents, Defendants Cassidy, Palmer and Wilson, in the proper method of obtaining search warrants.

40. All But Furgotten's failure to properly train, control, and/or supervise Defendants Cassidy, Palmer and Wilson in the proper method of obtaining search warrants created a substantial risk of the constitutional violations identified herein.

41. Plaintiff believes, and therefore avers, that the named Defendants previously engaged in conduct substantially similar to that described hereinbefore above which resulted in additional civil rights violations.

42. As a result of the aforementioned incidents, Plaintiff believes, and therefore avers, that Defendant All But Furgotten was aware of the illegal conduct of Defendants Cassidy, Palmer and Wilson.

Second Am. Compl. ¶¶ 37-43.

The Court agrees with Defendants that Ms. Gower's conclusory and formulaic allegations are insufficient to state a Monell claim against All But Furgotten Humane Rescue. Assuming Ms. Gower's central allegation is true, that the Doe Defendants provided false information to the humane officers, who knew the information was false, the Court need not credit Ms. Gower's implied, unsupported, and conclusory allegation that All But Furgotten Humane rescue made a deliberate or conscious choice to fail to train employees to not include false information in an affidavit when seeking to obtain a search warrant. Also, the Court need not accept her conclusory, non-specific allegation that the humane officers previously engaged in unspecified and vague, substantially similar, conduct. Estate of Roman, 914 F.3d at 795-96. Ms. Gower has also not plead facts, as opposed to conclusory statements, as to how All But Furgotten Humane Rescue inadequately trained and prepared the humane officers, so as to amount to a deliberate indifference to Ms. Gower's constitutional rights in this case. See Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals, 766 F. Supp. 2d 555, 562 (E.D. Pa. 2011) (plaintiff "baldly asserts" a pattern and practice of unlawful and improper behavior with

no supporting factual averments); compare Estate of Roman, 914 F.3d at 799-800 (failure-to-train claim survives motion to dismiss where there were extensive factual allegations, including a consent decree, and that the police department was under the supervision of a federal monitor, in part, to oversee reforms in searches and arrests, and Court fairly inferred that problems that led to consent decree were occurring at time of plaintiff's arrest). Accordingly, Defendants' motion to dismiss Ms. Gower's failure-to-train municipal liability claim will be granted, with prejudice.

D. **Qualified Immunity Defense**

Defendants next argue that the individual officers are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, government officials are put on notice that their conduct is unlawful. Hope v. Pelzer, 536 U.S. 730, 739 (2002). In analyzing a qualified immunity defense, the court determines whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id.

As discussed above in Section A, Ms. Gower, however, has sufficiently alleged a plausible section 1983 Fourth Amendment violation. Defendants nevertheless argue that the individual officers are entitled to qualified immunity because their conduct followed the issuance of a search warrant by a detached neutral magistrate. Defs.' Br. 14-15 (citing Messerschmidt v.

15

Millender, 565 U.S. 535 (2012). Given that Ms. Gower has stated a claim of a constitutional violation based on her allegation that the humane officers included known false statements and omitted facts, the Court cannot conclude that probable cause for issuing the search warrants existed, or that the humane officers were acting within the scope of their authority. Turning to the second prong of qualified immunity, the Fourth Amendment violation in this case was "clearly established" at the time the search warrants were executed. "'If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously fails to observe a right that was clearly established.'" Bamont, 163 F.Supp.3d at 147 (quoting Lippay v. Christos, 996 F.2d 1490, 1504 (3d Cir. 1993) (other citations omitted)). As such, it is premature to find qualified immunity. The motion to dismiss based on qualified immunity will be denied without prejudice.

**E. Punitive Damages Claim**

"Punitive damages may be awarded in a § 1983 action only where 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Smith v. Cent. Dauphin Sch. Dist., 419 F. Supp. 2d 639, 649 (M.D. Pa. 2005) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). In Smith v. Central Dauphin School District, the District Court considered plaintiff's contention that the individual "defendants were unlawfully motivated by a desire to prevent the public from learning how they had unlawfully kept information from students and parents, while they demonstrated a blatant disregard for the rights and health of [plaintiff]." Smith, 419 F. Supp. 2d at 649. The Smith Court recognized that plaintiff's statement did "not specifically us[e] the words 'evil intent' or 'reckless or callous indifference;'" however it noted that the contention specifically asserted that defendants "intentionally disregarded [plaintiff's] federally protected

16

rights." Id. The Smith Court found such allegations to be sufficient to survive defendants' motion to dismiss the punitive damages claim. Id. Similarly, in a case where the allegations were that the individual defendants had actual knowledge of the constitutional violation, and they failed to take appropriate action, and they treated plaintiff in a hostile manner, the District Court found those allegations to be sufficient to survive a motion to dismiss the punitive damages claim. Toplisek v. Canon McMillan Sch. Dist., No. CIV.A. 10-767, 2010 WL 4103645, at *6 (W.D. Pa. Oct. 18, 2010). The Toplisek Court similarly remarked that even though plaintiff did not specifically state the words "evil intent" or "reckless or callous indifference", the plaintiff did allege that defendants intentionally disregarded the plaintiff's federally protected rights. Id. See also Bell v. Lackawanna Cty., 892 F. Supp. 2d 647, 691 (M.D. Pa. 2012) ("A defendant's knowledge that he is acting in violation of federal law may suffice to establish reckless indifference in § 1983 civil rights cases," citing Alexander v. Riga, 208 F.3d 419, 431 (3d Cir.2000)). In this case, Ms. Gower alleges that the Defendants, by omitting the fact that they had been on Ms. Gower's property and saw that her animals were being properly treated, intentionally disregarded her rights in seeking the search warrants. These allegations are sufficient to state a claim for punitive damages at this stage.

**F. Intentional Infliction of Emotional Distress (Count III)**

To sustain a claim for intentional infliction of emotional distress, a plaintiff must show extreme and outrageous conduct which is deliberate or reckless and which causes severe emotional distress. Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 190 (1987). "In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." Reeves v. Middletown Athletic Ass'n, 2004 PA Super 475, ¶ 17, 866 A.2d 1115, 1122–23 (2004). "[O]nly the most egregious conduct" will sustain such a claim. Hoy v.

Angelone, 554 Pa. 134, 151 (1998). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Kazatsky, 527 A.2d at 991. The Pennsylvania Supreme Court explained that another way to describe 'outrageous or extreme conduct' is: "'[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.'" Hoy, 554 Pa. at 151 (quoting Restatement (Second) of Torts § 46, comment d; Dauehen v. Fox, 372 Pa. Super. Ct. 405, 412, 539 A.2d 858, 861 (1988)).

Here, Ms. Gower alleges that the humane officers secured search warrants based on false allegations and material omissions. She alleges that during the course of the search, one of the named Defendant's desecrated the urn of containing the ashes of her deceased child. Second Am. Compl. ¶ 45. She alleges that as a result of Defendants' actions she suffers "severe emotional distress and physical injury in the form of sleepless nights and high anxiety," as well as "great pain, suffering, inconvenience, mental anguish, emotional distress and physical injury including, but not limited to, psychological problems, embarrassment, inconvenience and humiliation . . . ." Second Am. Compl. ¶¶ 66-67.

Assuming Ms. Gower 's allegations are true, they are not so outrageous in character, nor so extreme as to support a clam for intentional infliction of emotional distress. Case law supports this conclusion. In Atkinson v. City of Philadelphia, 2000 WL 793193, * 1, *6 (E.D. Pa. June 20, 2000), claims that a police detective submitted a false affidavit of probable cause to obtain an arrest warrant for a plaintiff, after which police forced their way into the plaintiff's

home while searching to arrest him, and in the process, terrified his children, did not rise to the level of atrocity needed to sustain a claim for intentional infliction of emotional distress. Likewise, in Gilbert v. Feld, 842 F. Supp. 803, 821 (E.D. Pa. 1993), claims that a county detective instituted the plaintiff's arrest without probable cause, arrested him in front of his grandmother, placed him in handcuffs and made him walk five or six blocks, transferred him to another jail without instructions to do so, detained him for several hours before his arraignment, persuaded him to waive his arraignment in Philadelphia until he was transferred to Montgomery County, re-arrested him without probable cause, and signed an affidavit of probable cause, despite knowing it was false, were held not to be so outrageous as to constitute a claim for intentional infliction of emotional distress. Finally, in Sieger v. Township of Tinicum, 1991 WL 197315, *5 (E.D. Pa. Sept. 30, 1991), claims that a township executive official knowingly issued a series of citations without probable cause and testified falsely at a hearing on the citations were deemed not to rise to the requisite level of outrageousness. In addition, Ms. Gower has not alleged the necessary physical harm to state a claim. Accordingly, the Court finds that Ms. Gower has failed to sufficiently allege a claim for intentional infliction of emotional distress. Defendants' motion to dismiss this claim will be granted with prejudice.

### G. Trespass and Conversion Claims (Counts IV & V)

Finally, Defendants seek dismissal of Ms. Gower's state law claims for trespass and conversion based on the assumption that Ms. Gower has failed to state a viable claim for unlawful search and seizure. As discussed above, Ms. Gower's section 1983 claim for unlawful search and seizure has survived the motion to dismiss, and therefore Defendants' motion to dismiss the state law claims for trespass and conversion will be denied.

19

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted as to Plaintiff's claims of failure-to-train and intentional infliction of emotional distress. The Court finds that to permit a curative amendment on these claims would be futile. Also, Plaintiff has withdrawn her reckless investigation claim.

Defendants' Motion to Dismiss will be denied as to Plaintiff's section 1983 Fourth Amendment claim, and as regards her state law claims for trespass and conversion. In addition, Defendants' Motion to Dismiss, based on qualified immunity, will be denied without prejudice.

An appropriate Order will be entered.

BY THE COURT:

Dated: July 11, 2019

Marilyn J. Horan
United States District Court Judge